Slip Op. 08 - 3

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - -x
MITTAL STEEL ROMAN and SC SILCOTUB      :
S.A.,
                                        :
                      Plaintiffs,
                                        :
            v.
                                        :
THE UNITED STATES OF AMERICA,
                                        :   Consolidated
                      Defendant,            Court No. 06-00173
                                        :
            -and-
                                        :
UNITED STATES STEEL CORPORATION,
                                        :
                 Intervenor-Defendant.
                                        :
- - - - - - - - - - - - - - - - - - - -x

Memorandum & Order

[Final sunset-review determination of U.S. Interna-
 tional Trade Commission affirmed; action dismissed.]

Decided: January 11, 2008

Arent Fox LLP (John M. Gurley, Nancy A. Noonan and Diana
Dimitriuk-Quaia) for the plaintiffs.

James M. Lyons, General Counsel, Andrea C. Casson,
Assistant General Counsel for Litigation, and Rhonda M. Hughes,
U.S. International Trade Commission, for the defendant.

Skadden, Arps, Slate, Meagher & Flom LLP (Robert E.
Lighthizer, John J. Mangan, James C. Hecht and Stephen P.
Vaughn) for the intervenor-defendant.

AQUILINO, Senior Judge:  This action consolidates com-

plaints filed on behalf of the above-encaptioned plaintiff

Consolidated
Court No. 06-00173                                          Page 2

Romanian enterprises.   Each contests the final determination of

a five-year review conducted by the U.S. International Trade

Commission ("ITC") pursuant to 19 U.S.C. §1675(c) that

revocation of the antidumping-duty order on small diameter

carbon and alloy seamless standard, line, and pressure pipe

("CASSLP") from their country of origin would be likely to lead

to continuation or recurrence of material injury to an industry

in the United States within a reasonably foreseeable time.   See

USITC Pub. 3850, p. 1 (April 2006)[1].

I

        This determination was by operation of the law when

three commissioners were counted in its favor and an equal

number in the negative.   See 19 U.S.C. §1677(11).   Of the six

commissioners, four exercised their discretion not to cumulate

imports from Romania with imports from the Czech Republic,

Japan, and South Africa, the other countries under review.   Of

those four, only one made an affirmative determination as to

Romania.   The other two in favor were by commissioners who

_____

        [1] Referred to hereinafter as ITC record document ("R.Doc")
231.

Consolidated
Court No. 06-00173                                                    Page 3


cumulated imports from Romania with all of the other countries

subject to the review, including the Czech Republic and South

Africa.

> The plaintiffs contend that those two commissioners

> erred as a matter of law when they based their
> decision to maintain the order on Romania (and all of
> the subject countries) using cumulated data . . ..
> The Commission determined not to cumulate imports from
> Romania with any other subject country, as reflected
> by the decision of four of the Commissioners.
> Accordingly, [those two commissioners] should have
> made their injury determination on the same, un-
> cumulated basis.

Plaintiffs' Memorandum, p. 5.   Additionally, they claim that

Commissioner Aranoff's determination that revocation of the

antidumping-duty order on CASSLP from Romania would be likely to

lead to continuation or recurrence of material injury to the

domestic industry is not supported by substantial evidence on

the record.   See id. at 6.   This contention relies upon the

three commissioners counted in the negative, as well as upon

perceived internal inconsistencies in the Aranoff determination

itself.[2]

---

[2] Given the quality of plaintiffs' written submissions, as
well as those in opposition, plaintiffs' motion for oral
argument can be, and it hereby is, denied.

A

        The ITC is required to make a final determination of
whether a domestic industry is materially injured, or is
threatened with material injury, by reason of imports, or sales
(or likelihood of sales) for importation.   19 U.S.C.
§1673d(b)(1).   Generally, five years after the date of
publication of an affirmative determination and subsequent
imposition of an antidumping-duty order, the Commission conducts
a review to determine whether revocation of such order would be
likely to lead to continuation or recurrence of dumping and
material injury.   See 19 U.S.C. §1675(c)(1).   In conducting such
a review, the ITC is required to take into account:

        (A)  its prior injury determinations, including
    the volume, price effect, and impact of imports of the
    subject merchandise on the industry before the order
    was issued . . .,

        (B)  whether any improvement in the state of the
    industry is related to the order . . .,

        (C)  whether the industry is vulnerable to
    material injury if the order is revoked . . ., and

        (D)  in an antidumping proceeding under section
    1675(c) . . ., the findings of the administering
    authority regarding duty absorption under section
    1675(a)(4) . . ..

19 U.S.C. §1675a(a)(1).   Additionally,

> the Commission may cumulatively assess the volume and
> effect of imports of the subject merchandise from all
> countries with respect to which . . . [5-year reviews]
> were initiated on the same day, if such imports would
> be likely to compete with each other and with domestic
> like products in the United States market.

19 U.S.C. §1675a(a)(7).


This court has exclusive jurisdiction over an action commenced to contest a resulting "sunset review" determination. 28 U.S.C. §1581(c). And it shall hold unlawful any determination, finding, or conclusion unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. §1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Nippon Steel Corp. v. United States, 337 F.3d 1373, 1379 (Fed.Cir. 2003), quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). In addition, the underlying determination must show that the agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)(internal quotation marks deleted).

Even if the court could draw "two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). That is, determinations can be affirmed so long as they are reasonable and supported by the record as a whole, even if there is some evidence that detracts from the agency's conclusions. E.g., Olympia Indus., Inc. v. United States, 22 CIT 387, 389, 7 F.Supp.2d 997, 1000 (1998), citing Atlantic Sugar, Ltd. v. United States, 744 F.2d 1556, 1563 (Fed.Cir. 1984).

B

The plaintiffs contend that "the Commission's affirmative decision as to Romania was an error as a matter of law because it did not reflect the actual decision of the Commission", and, additionally, it is "unsupported by substantial evidence on the record because it was based in part on cumulated data, which included data from countries for which the Commission made negative determinations." Plaintiffs' Memorandum, pp. 10-11. This position derives from plaintiffs' reading of 19 U.S.C. §1675a(a)(7), supra, that the "decision on cumulation is the decision of the 'Commission'". Id. at 12.

Consolidated
Court No. 06-00173                                                    Page 7

They argue that, because a majority of the commissioners, and

thus the ITC as a whole, made a negative determination as to the

Czech Republic and South Africa, and the determination of

Commissioners Koplan and Lane with regard to Romania included

cumulated data from those other two countries,

> the Commission failed to act in accordance with law
> when it robotically tallied the votes and made an
> affirmative determination as to Romania without
> reviewing the contradictions between the individual
> Commissioner's decisions.

Id. at 16.


                                    C

        In accordance with 19 U.S.C. §1675a(a)(7), supra, the

record reflects findings that all reviews were initiated on May

2, 2005[3] and

> that the subject imports of small diameter CASSLP . . .
> from the Czech Republic, Japan, Romania, and South
> Africa are fungible with each other and with the
> domestic like product, that there will likely be a
> reasonable overlap of geographic markets and channels
> of distribution if the orders are revoked, and that
> the subject imports would be simultaneously present.

R.Doc 231 at 14.   Also, considering each group of subject

imports, there was no finding that those imports from the Czech

_____

        [3] See R.Doc 231 at 9.

Republic, Japan, Romania, and South Africa would likely have no discernible adverse impact on the domestic industry if the antidumping-duty order were revoked.   See id. at 10-13.   Hence, there was discretion to exercise the authority to cumulate the subject imports during the instant review.[4]

   Ugine-Savoie Imphy v. United States, 26 CIT 851, 248 F.Supp.2d 1208 (2002), dealt with facts similar to those presented here.   In that matter, five commissioners found that they had discretion to cumulate.   However, as in the action at bar, a majority declined to cumulate imports from France, the imports at issue in that action, with imports from Brazil and India.   Commissioner Bragg, on the other hand, did cumulate Brazilian, French, and Indian imports for purposes of the review and became one of the three tie votes not to revoke the antidumping-duty order.   The plaintiffs in Ugine argued that the commissioner abused her discretion because, by cumulating, France was unfairly penalized for the failure of Brazil and India to participate in the sunset review.

---

[4] See R.Doc 231 at pages 15 through 18 for discussion of other considerations that led four of the commissioners to decline to exercise their discretion to cumulate subject imports from Romania with the Czech Republic, Japan, and South Africa.

The plaintiffs at bar attempt to distinguish <u>Ugine</u>, contending that in that action,

> since the determination by Commissioners Miller and
> Hillman[] was that revocation of the orders from
> France, individually, and India/Brazil, cumulated,
> would cause a continuation or recurrence of material
> injury to the domestic industry, Commissioner Bragg's
> decision that those countries' imports would,
> cumulatively, also cause a continuation or recurrence
> of material injury to the domestic industry, was
> consistent.

Plaintiffs' Memorandum, p. 14.  While this point is well-taken, the court's opinion in <u>Ugine</u> is clear and not so limiting as to be inapplicable in the facts presented herein, to wit:

> . . . Commissioner Bragg did not abuse her discretion
> by cumulating imports . . . because the requirements
> of § 1675a(a)(7) were met.  There is no exception for
> cumulation in the statute based on non-participation
> in the sunset reviews.  There is an express exception
> to cumulation under the adverse impact provision, and
> the Court declines to create an implied exception for
> non-participation when Congress clearly delineated the
> exceptions it intended under the Statute.

26 CIT at 866-67, 248 F.Supp.2d at 1223.

The Court of Appeals for the Federal Circuit ("CAFC") addressed similar circumstances in <u>Corus Group PLC v. Int'l Trade Comm'n</u>, 352 F.3d 1351 (2003).  In that case, the domestic industries in the underlying agency determination were defined

by four of the six commissioners as tin-mill products and, separately, certain carbon flat-rolled steel. Three of them made a negative injury determination with regard to the tin-mill-product imports, while the fourth reached the opposite result. The remaining two commissioners defined the domestic industry as one industry, encompassing both tin-mill products and flat-rolled steel, and both made affirmative injury determinations. Thus, the "Commission reported that it was evenly divided as to whether increased importation of tin mill products caused serious injury." 352 F.3d at 1355. The appellants contended before the CAFC that the votes of those commissioners who did not analyze tin-mill products as a separate category could not be counted in the affirmative and that the Commission's vote should properly have been reported as a 3-1 determination of no serious injury. See id. at 1360.

The CAFC found "no merit to this argument." Id. It noted that those two commissioners "specifically voted affirmatively with regard to tin mill products[, and that] . . . neither commissioner objected when the Commission tallied their votes as affirmative". Id. at 1360-61. Additionally, the CAFC went on to state that, having

reached this conclusion, we are not "compelled . . . to probe the mental processes" of the commissioners any further to determine whether their votes were properly counted as affirmative despite those commissioners' different underlying reasoning. Voss [Int'l Corp. v. United States, 67 CCPA 96, 102], 628 F.2d [1328,] 1332 [(1980)] (holding that the Commission properly recorded a non-voting commissioner's vote as an abstention rather than as a dissent); cf. Pub. Serv. Comm'n v. Fed. Power Comm'n, 543 F.2d 757, 777 (D.C.Cir.1974)(holding that "in each instance, what counted in the definition of agency action was the vote rather than the individual view" of each member of the Federal Power Commission). Accordingly, the Commission did not err in counting the votes as to tin mill products as a 3-3 tie.

Id. at 1361. Again, although the specific facts differ herein, Corus Group cannot be discounted.

In U.S. Steel Group v. United States, 96 F.3d 1352, 1359-62 (Fed.Cir. 1996), domestic steel producers challenged the ITC's negative injury determinations. In that case, two commissioners engaged in one-step analysis, others took a two-step approach, and one commissioner did not specify his type of analysis. The domestic producers contended that "there should be a single methodology, applicable to each of the commissioners, for determining whether a domestic industry is injured". 96 F.3d at 1361. The CAFC opined, however, that the "statute on its face compels no such uniform methodology" and

Consolidated
Court No. 06-00173                                           Page 12


went on to make clear that the

> invitation to employ such diversity in methodologies
> is inherent in the statutes themselves, given the
> variety of the considerations to be undertaken and the
> lack of any Congressionally mandated procedure or
> methodology for assessment of the statutory tests.
>
> This court has no independent authority to tell
> the Commission how to do its job.  We can only direct
> the Commission to follow the dictates of its statutory
> mandate.  So long as the Commission's analysis does
> not violate any statute and is not otherwise arbitrary
> and capricious, the Commission may perform its duties
> in the way it believes most suitable.


Id. at 1362.  In the light of this reasoning, this court cannot

and therefore does not conclude that the exercise of discretion

to cumulate per 19 U.S.C. §1675a(a)(7) by Commissioners Koplan

and Lane was not in accordance with law, and therefore the

findings based on the cumulated data are not unsupported by

substantial evidence on the record.


                                D

        The plaintiffs contend that Commissioner Aranoff's

decision on the

> volume, price effects, and impact of imports from
> Romania on the domestic industry is not supported by
> substantial evidence on the record, particularly in
> view of the lack of vulnerability of the domestic
> industry.

Plaintiffs' Memorandum, p. 2.   They offer two arguments to

support their position: first, the commissioner's findings are

contradicted by those of Commissioners Okun, Hillman and

Pearson.   Secondly, they contend that her findings contain

internal inconsistencies that render her volume, price-effect,

and likely-impact determinations unsupported by substantial

evidence on the record.[5]

(1)

The plaintiffs state that Commissioner Aranoff

> found that the likely volume of imports of pipe from
> Romania would be significant if the order was revoked.
> . . .   The dissenting views of Commissioners Okun,
> Hillman, and Pearson explicitly lay out the
> substantial evidence on the record that discredits
> [this] conclusion.

Id. at 20 (citations omitted); that she

> found that "the subject imports from Romania . . .
> would be likely to have significant depressing or
> suppressing effects on the prices of the domestic like
> product in the reasonably foreseeable future if the

---

[5] See Plaintiffs' Memorandum, pp. 20-28.   Additionally, the
plaintiffs request that, "[i]n the event of a remand . . . the
Court should also instruct the Commission to reconsider this
decision based on the entry of Romania into the European Union".
Id. at 18.   But this request is not of consequence given the
discussion hereinafter.

antidumping order were revoked." . . .      [Yet a]s
explained by Commissioners Okun, Hillman, and Pearson,

> in these reviews, subject imports from Romania
> undersold domestic product in every available
> price comparison.  Notwithstanding the consistent
> underselling by subject imports from Romania,
> U.S. prices have increased over the period of
> review. . . . Nor has the underselling by subject
> imports from Romania had any price suppressing
> effect.

Id. at 24 (citation omitted); and that Commissioner Aranoff's

> decision that revocation of the antidumping duty order
> on small diameter CASSLP . . . from Romania would
> negatively impact the domestic industry was
> unsupported by substantial evidence on the record,
> particularly in view of the lack of vulnerability of
> the domestic industry. . . . [Whereas] Commissioners
> Okun, Hillman, and Pearson [] explained:

>> In line with our findings regarding the likely
>> volume and price effects of subject imports from
>> Romania, we find that subject imports would not
>> be likely to have a significant adverse impact on
>> the domestic industry's output, sales, market
>> share, profits, or return on investment, if the
>> order were revoked.  As demand is projected to
>> remain strong, the small volume of subject
>> imports that would be likely upon revocation
>> would not be likely to have a significant adverse
>> impact on the domestic industry.

Id. at 26-27.


     Even accepting these assertions does not necessarily

govern    consideration   of   whether   another   commissioner's

determination  is  unsupported  by  substantial  evidence  on  the

Consolidated
Court No. 06-00173                                                    Page 15

record.   In <u>U.S. Steel Group v. United States</u>, for example, the

CAFC confirmed the

> indisputable proposition that each commissioner is
> free to attach different weight to factual information
> bearing on, and determinate of, the many statutory
> tests; and that commissioners may ultimately reach
> different factual conclusions on the same record.

96 F.3d at 1362.   And in <u>Metallverken Nederland B.V. v. United</u>

<u>States</u>, 13 CIT 1013, 728 F.Supp. 730 (1989), where the court was

urged to "negate a commissioner's determination based upon the

findings of the dissenting commissioners," it responded that

> Congress' expectation that commissioners would file
> concurring and dissenting opinions stating their
> findings of fact and conclusions of law "would be
> pointless if the existence of differing views
> precluded courts from sustaining Commission
> determinations."

13 CIT at 1017, 728 F.Supp. at 734, quoting <u>Citrosuco Paulista,</u>

<u>S.A. v. United States</u>, 12 CIT 1196, 1210-11, 704 F.Supp. 1075,

1089 (1988).   <u>See also</u> <u>Matsushita Elec. Indus. Co. v. United</u>

<u>States</u>, 750 F.2d 927, 936 (Fed.Cir. 1984)(evidence of record

which detracts from evidence supporting ITC's decision is

neither surprising nor persuasive).

Given the agency record at bar, in the light of the

foregoing caselaw, this court cannot set aside Commissioner

Consolidated
Court No. 06-00173                                          Page 16

Aranoff's determination merely because other commissioners developed different views thereof.

(2)

In a five-year review, the ITC must determine whether revocation of an antidumping-duty order "would be likely to lead to continuation or recurrence of material injury within a reasonably foreseeable time." 19 U.S.C. §1675a(a)(1). Under this standard, the agency

> must decide the likely impact in the reasonably foreseeable future of an important change in the status quo -- the revocation or termination of a proceeding and the elimination of its restraining effects on volumes and prices of imports.

Uruguay Round Agreements Act Statement of Administrative Action, H.R. Rep. No. 103-316, vol. 1, p. 884. Commissioner Aranoff considered the likely volume, price effect, and impact of imports of the subject merchandise on the industry if the orders were revoked or the suspended investigation terminated and determined that,

> based on evidence on the record, [] producers in Romania will ship significant volumes of small diameter CASSLLP . . . into the U.S. market if the antidumping duty order is revoked. Accordingly, . . . the likely volume of imports of small diameter CASSLP . . . from Romania into the United States would be

> significant in the reasonably foreseeable future if
> the antidumping duty order were revoked.

R.Doc 231 at 66; and, with regard to price effect, that, as the

likely volume will be significant in that reasonably foreseeable

future, the

> subject imports from Romania would be likely to have
> significant depressing or suppressing effects on the
> prices of the domestic like product in the reasonably
> foreseeable future if the antidumping duty order were
> revoked.

Id. at 68; and, with regard to the likely impact of those

imports, that,

> although demand is projected to remain strong, the
> likely substantial volume and price effects of the
> subject imports from Romania would be sufficient to
> have a significant negative impact on the production,
> shipments, sales, market share, employment, and
> revenues of the domestic industry, despite its lack of
> vulnerability. This reduction in the industry's
> production, shipments, sales, market share, and
> revenues would adversely affect the industry's
> profitability and ability to raise capital and
> maintain necessary capital investments.

Id. at 69.

The plaintiffs are of the view that "portions of the

Commissioner's determination are unsupported by substantial

evidence on the record." Plaintiffs' Memorandum, p. 20. They

Consolidated
Court No. 06-00173                                                    Page 18

claim it contains "flaws" and accordingly pray that the court

remand

> with instructions to provide specific cites to record
> evidence regarding Commissioner Aranoff's findings on
> likely volume, price effect, and impact on the
> domestic industry in the event that the subject order
> is revoked, and if that is not possible, to enter a
> negative determination for Romania[.]

Id. at 29.


                                    (a)

        The plaintiffs posit "internal inconsistencies" that

render the commissioner's volume determination unsupported by

substantial evidence on the record.   Id. at 21.   Specifically,

they question her consideration of historical data and her

finding with regard to the duration of higher prices in western

Europe and Japan.   They argue that the focus on such data

> ignores her prior acknowledgement that Silcotub was
> only purchased by the Tenaris Group in 2004, and the
> testimony of Silcotub's representatives that
> Silcotub's production is being refocused toward
> higher-value-added non-subject merchandise, as well as
> making significant marketing changes.

Id.   But 19 U.S.C. §1675a(a)(1)(A) calls for commissioners to

take into account the "impact of imports of the subject

merchandise on the industry before the order was issued", and

the plaintiffs acknowledge that there are no historical data yet
for that company's purported new production and marketing
strategy.

Ergo, Commissioner Aranoff's consideration of such
data, while acknowledging Silcotub's announced strategic change,
was part of her statutory mandate.

The plaintiffs take issue with the commissioner's
conclusion that higher prices for CASSLP in western Europe and
Japan will not provide an incentive for Romanian producers to
continue to serve those markets rather than the United States
and also with her discussion of other evidence on the record.
See id. at 22. But she concluded that there was "no evidence to
suggest European or Asian prices are likely to stay above U.S.
prices for the reasonably foreseeable future", R.Doc 231 at 65,
which appears to be reasonable, considering that prices for
subject pipe had only "recently been higher in western Europe
and parts of Asia," and "the price differences between U.S. and
western European markets narrowed . . . during 2005." Id. Cf.
Turner Broad. Sys., Inc. v. FCC, 520 U.S. 180, 211 (1997) (if
the determination is reasonable and supported by substantial
evidence on the record, summary judgment is appropriate

Consolidated
Court No. 06-00173                                              Page 20

regardless of whether the evidence is in conflict); <u>Metallverken</u>

<u>Nederland B.V. v. United States</u>, 13 CIT at 1017, 728 F.Supp. at

734 (1989).


                                (b)

        The plaintiffs contest Commissioner Aranoff's view

that

        the subject imports from Romania would be likely to
        have significant depressing or suppressing effects on
        the prices of the domestic like product in the
        reasonably foreseeable future if the antidumping duty
        order were revoked[,]

R.Doc 231 at 68, claiming it is unsupported by substantial

evidence on the record.  Plaintiffs' Memorandum, p. 24.  They

purport to view the evidence on the record as showing that U.S.

prices increased during the period of review, even with the

underselling of the Romanian imports at issue, and claim this

circumstance should negate the commissioner's finding.


        Although finding that "Romanian imports, which have

been underselling domestic merchandise during the period of

review, are not currently having price depressing or suppressing

effects", the commissioner also noted that

        improvements in the condition of the U.S. industry are
        to be expected following the imposition of an
        antidumping order, . . . [which] can be evidence of

Consolidated
Court No. 06-00173                                            Page 21

> the effectiveness of the discipline imposed by an
> order. Notwithstanding the discipline imposed by the
> order . . ., those imports continued to undersell the
> U.S. product by significant margins.[] There is no
> evidence to suggest that such underselling would not
> continue in the event of revocation of the antidumping
> duty order.

R.Doc 231 at 67 (footnote omitted). Hence, she concludes that

the subject imports are likely to have such an effect if the

antidumping-duty order were revoked, given "these likely volumes

and likely levels of underselling". Id.

On its face, this is clear reasoning by the

commissioner, based upon substantial evidence, with regard to

the price effects of subject Romanian imports if the

antidumping-duty order were to be revoked. Cf. Acciai Speciali

Terni, S.P.A. v. United States, 19 CIT 1051, 1061

(1995)("Pricing changes may be delayed or may occur in part due

to other factors").

                              (c)

The plaintiffs assert that Commissioner Aranoff's view

that revocation of the antidumping-duty order on CASSLP from

Romania would negatively impact the domestic industry is

unsupported by substantial evidence on the record in light of

her finding that "the domestic industry is not currently

Consolidated
Court No. 06-00173                                                    Page 22


vulnerable to injury by reason of increased subject imports."

This is based in particular upon consideration that

> the industry did not experience any financial losses
> during the period of review.  Rather, the domestic
> industry was profitable in every year of the period of
> review and profits increased to very high levels.

Plaintiffs' Memorandum, p. 26, quoting R.Doc 231 at 26 and

referring to the separate views of Commissioner Aranoff, <u>id</u>. at

68 ("I join the Views of the Commission regarding the discussion

of the domestic industry's lack of vulnerability").

     But Commissioner Aranoff cites the following evidence

on the record in support of her ultimate determination that the

revocation of the antidumping-duty order would negatively impact

the domestic industry, to wit:

> [D]omestic producers' . . . capacity significantly
> increased over the period of review.[] Production fol-
> lowed the same trend.[]  However, capacity utilization
> decreased over the period, albeit only slightly.[]
>
> U.S. shipments increased over the period of
> review[] and inventories declined.[]  Net sales in-
> creased over the period.[]  U.S. producers' market
> share decreased from 2000 to 2004,[] as nonsubject
> imports gained market share.[]  However, domestic pro-
> ducers' market share increased during the interim 2005
> period, as compared with the interim 2004 period.[]
>
> The number of production and related workers fell
> over the period,[] as did their hours worked.[]
> However, wages paid increased,[] as did productivity.[]

Consolidated
Court No. 06-00173                                                    Page 23

Both capital expenditures[] and research and
development expenses declined.[]

I concluded above that revocation of the
antidumping duty order with respect to Romania likely
would lead to significant volumes of subject imports
that would undersell the domestic like product and
significantly depress or suppress U.S. prices.   In
addition, although demand is projected to remain
strong, the likely substantial volume and price
effects of the subject imports from Romania would be
sufficient to have a significant negative impact on
the production, shipments, sales, market share,
employment, and revenues of the domestic industry,
despite its lack of vulnerability.   This reduction in
the industry's production, shipments, sales, market
share, and revenues would adversely affect the
industry's profitability and ability to raise capital
and maintain necessary capital investments.[6]

R.Doc 231 at 68-69 (footnotes to supporting evidence on the

record omitted).

---

[6] Plaintiffs' memorandum, pages 27-28, criticizes the final
two sentences of this quotation as "conclusory . . . statements
[that] do not meet the Court's substantial evidence standard
because they do not constitute cites to substantial evidence on
the record."   They refer to Nippon Steel Corp. v. United States,
29 CIT ___, 391 F.Supp.2d 1258 (2005)("Nippon V"), wherein the
court reviewed a second remand determination in which, according
to the plaintiffs, the ITC made "similar conclusory statements".
In Nippon V, the court found a lack of "substantial evidence to
support [the Commission's] conclusion" and remanded the matter
yet again.   However, Nippon Steel Corp. v. United States, 494
F.3d 1371, 1381 (Fed.Cir. 2007), a reversal of that opinion, has
since issued, holding that the CIT "erred in concluding that the
Commission's decision in the Second Remand Determination was not
supported by substantial evidence".

Consolidated
Court No. 06-00173                                               Page 24

        Judicial review of a matter like this has led to

recognition that there is

>     no inconsistency between the requirement that the
>     factors indicating present injury be considered when
>     examining threat and Congress' statement that the
>     absence of any indicia of present injury should not be
>     considered conclusive that threat of injury does not
>     exist.

E.g., Rhone Poulenc, S.A. v. United States, 8 CIT 47, 52, 592

F.Supp. 1318, 1323-24 (1984).   Therefore, the commissioner's

acceptance that the domestic U.S. industry is not currently

vulnerable does not, in itself, mandate reconsideration.   A

reviewing court must still find that the administrative record

possesses substantial evidence in support of a point of view

arguably inconsistent with this factor.   The court finds that to

be this case specifically at bar.


                                II

        In view of the foregoing, plaintiffs' motion for

judgment on the agency record must be denied and this action

dismissed.

Decided:  New York, New York
          January 11, 2008


                              ___/s/ Thomas J. Aquilino, Jr.___
                                     Senior Judge

<u>J U D G M E N T</u>

UNITED STATES COURT OF INTERNATIONAL TRADE

Thomas J. Aquilino, Jr., Senior Judge


- - - - - - - - - - - - - - - - - - -x
MITTAL STEEL ROMAN and SC SILCOTUB     :
S.A.,
                                       :

                  Plaintiffs,
                                       :   Consolidated
            v.                             Court No. 06-00173
                                       :

THE UNITED STATES OF AMERICA,
                                       :

                  Defendant.
- - - - - - - - - - - - - - - - - - -x


         This action having been duly submitted for decision; and

the court, after due deliberation, having rendered a decision

herein;  Now therefore, in conformity with said decision, it is


         ORDERED, ADJUDGED and DECREED that plaintiffs' motion

for judgment on the agency record be, and it hereby is, denied;

and it is further


         ORDERED, ADJUDGED and DECREED that this action be, and

it hereby is, dismissed.

Dated:  New York, New York
        January 11, 2008



                            /s/ Thomas J. Aquilino, Jr.
                                   Senior Judge

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____        By: _____
                                           Deputy Clerk